THE BOROUGH OF OAKLAND ET AL., PROSECUTORS, v.
BOARD OF CONSERVATION AND DEVELOPMENT AND
THE CITY OF BAYONNE, RESPONDENTS.

Argued October 18, 1922—Decided November 3, 1922.

1.  The board of conservation and development has power to approve
    and consent to the application of a municipality for a water
    supply from waters of the state, notwithstanding the provision of
    *Pamph. L.* 1916, *p.* 129, creating two water supply districts and
    the commission created by that act did not succeed to the powers
    and authority of the board to pass upon such application.
2.  Section 22 of the act of 1916 (*Pamph. L.,* *p.* 129), which repealed
    "all acts and parts of acts theretofore passed inconsistent with
    the terms and provisions thereof," did not repeal expressly or by
    implication the act of 1917 (*Pamph. L.,* *p.* 634) and act of 1910
    (*Pamph. L.,* *p.* 552), which created and defined the powers and
    procedure of the board of conservation and development.
3.  The act of 1916, page 129, creating two water supply districts,
    and the appointment of commissioners thereof, provides for a
    local scheme of official arbitration between municipalities with
    conflicting claims to water supplies, and those district boards
    have no discretionary powers relating to the conservation and
    distribution of water.
4.  The consent by the board of conservation and development to the
    application of a municipality for a water supply, which involved
    the construction and operation of a reservoir, is not a violation
    of the fourteenth amendment of the United States constitution,
    which forbids the taking without just compensation or due process
    of law, because the municipality, to build the reservoir, must
    acquire all the rights of all parties necessary therefor by the
    exercise of the right of eminent domain.

Oakland v. Board of Conservation, &c.    98 N. J. L.

On *certiorari*.

Before Justice BLACK under the statute.

For the prosecutors, *Jacob Willard De Yoe, Edgar A. De Yoe, Francis Scott, Edward T. Merrey, Clarence Mabie, Fred W. Van Blarcom, Spaulding Frazer, Frank H. Sommer* and *John W. Griggs*.

For the respondent the city of Bayonne, *Aaron A. Melniker* and *John Milton*.

For the respondent Board of Conservation and Development, *Thomas McCran*, attorney-general, and *William Newcorn*, assistant attorney-general.

The opinion of the court was delivered by

BLACK, J. The public nature of this case makes a prompt decision of more importance than the form in which such decision might be cast. It will therefore be merely suggested in the briefest possible way the grounds upon which the decision rests.

The writs in the case were issued to review the approval or consent by the board of conservation and development of the application of the city of Bayonne for a supply of water for that city from the Ramapo river. Such consent and approval is dated March 23d, 1922, to which conditions are attached.

Forty reasons are filed for the reversal of such consent, which are common to all the prosecutors. Then twelve of the prosecutors each file additional reasons, special to each prosecutor, twenty-six in number.

It seems hardly necessary or desirable to discuss these reasons *seriatim*.

The first in importance is that the board of conservation and development had no jurisdiction in the premises to consider or deal with the application of the city of Bayonne,

therefore the application should have been dismissed by the board.

This, of course, involves an examination and consideration of the statutes under which the board of conservation and development was created and under which it purports to have acted. The jurisdiction to act must be found in the statutes. The initial legislation of the state, providing a method by which municipal corporations may obtain the permission of the state to divert water from a "new or additional" source of supply, is *Pamph. L.* 1907, *p.* 633, *ch.* 252. This act created a state water supply commission. Section 3 provides a procedure that is to be followed by municipal corporations desirous of taking advantage of the statute. By a supplement (*Pamph. L.* 1910, *p.* 551) the jurisdiction of the board, was extended to subsurface sources of water, re-enacting several sections of the original act, including section 3. By the act (*Pamph. L.* 1915, *p.* 426) a department of conservation and development was established under which the board of conservation and development was created, and by the terms of the act that board "shall succeed and exercise all the rights and powers and perform all the duties now exercised and performed by or conferred and charged upon the state water supply commission." The act also provides, section 7, the board "shall have full control and direction of all state conservation and development projects, and of all work in any way relating thereto, except such work as is conferred upon other boards not included within the provisions of this act." *Society, &c.,* v. *Board of Conservation and Development,* 90 *N. J. L.* 469; *affirmed,* 91 *Id.* 718.

It is conceded that, up to and after the passage of this statute, the board had jurisdiction to act upon a petition presented in accordance with the statutes. But the attack or argument is that by the statute (*Pamph. L.* 1916, *p.* 129, *ch.* 71) under which two water supply districts were created, one to be known as the North Jersey water supply district, the other the South Jersey water supply district, the for-

mer statutes were repealed; a new scheme and a new method of procedure were established, conferring upon the new commissioners in each district, when appointed by the governor respectively, the jurisdiction and authority heretofore conferred upon the state water supply commission and its successor, the board of conservation and development. The sixth section, however, provides that the district water supply commission must obtain the consent of the state water supply commission or its successor to the diversion of waters for such water supply, and notice must be given to obtain such consent after hearing. By section 22 it is provided "all acts and parts of acts heretofore passed, *inconsistent* with the terms and provisions of this act, or granting to the state water supply commission or its successors in authority the *powers* in this act granted to the boards of district water supply commissions, when created as herein provided, are hereby repealed."

The problem therefore for solution under this topic is—is there a repealer, either impliedly or expressly, by the act (*Pamph. L.* 1916, *p.* 129) of such powers and procedure of the board of conservation and development, as is contained in section 3 of *Pamph. L.* 1907, *p.* 634, and *Pamph. L.* 1910, *p.* 552?

The courts do not favor repealers by implication. *Landis* v. *Landis,* 39 *N. J. L.* 277; *Ruckman* v. *Ransom,* 35 *Id.* 567; *Terrone* v. *Harrison,* 87 *Id.* 544. An implied repealer may be dismissed with the suggestion that when two entirely different schemes or methods of procedure are provided for by the two acts, it will be presumed that the legislature was cognizant of that fact and the latter act was passed with full knowledge of all existing statutes on the same subject. If it was intended on such an important subject to destroy the one, it would have said so by express words. Is section 22 an express repealer? It speaks of acts *inconsistent.* The dictionary meaning of inconsistent is logically incompatible—contradictory—inharmonious. 4 *Words and Phrases* 3511. The methods of procedure are not inconsistent. They are different, it is true, but they may exist side by side.

In the first the board has to "either approve such application, reject it entirely, or approve the same subject to such reasonable terms and conditions as the commission may prescribe."

Under the act (*Pamph. L.* 1916, *p.* 129) a different scheme with more details is provided for. The act also provides that nothing can be done without first obtaining the consent of the state water supply commission or its successor. Nor can it be said the powers are the same, because the later act, so to speak, provides for a local scheme of official arbitration between municipalities with conflicting claims. These district boards have no discretionary power relating to the conservation and distribution of water. The consent of the state board must be first obtained. It is purely a permissive statute. So, there is no express repealer. This much may be inferred, at least, from a reading of the cases of *City of New Brunswick* v. *Board of Conservation and Development,* 94 *N. J. L.* 46; *affirmed, Id.* 558; *Fagan* v. *Mayor, &c., Borough of Wharton,* 95 *Id.* 254.

This result renders unnecessary a consideration of the act (*Pamph. L.* 1916, *p.* 129) from the viewpoint of its alleged unconstitutionality. It is next urged that the consent is null and void, because the board of conservation and development did not act and give its consent within ninety days from the filing of the application, as required by the statute. The application was filed February 21st, 1921. The approval is dated March 23d, 1922. It is sufficient on this point to say that the naming of the time of performance in a statute is not a limitation of authority unless the statute itself contains such words. *Botti* v. *McGovern,* 97 *N. J. L.* 353.

The statute (*Pamph. L.* 1907, *p.* 633, *ch.* 252) specifically provides that "the decisions of the commission shall at all times be subject to review by the courts for reasonableness, legality and form."

The next ground of attack is that the consent is unreasonable; that it is illegal; and it is not in form. These points are argued under eight heads in one brief and nine in

another with an ingenuity, a resourcefulness and skill that excites admiration, even though the argument does not produce conviction. The application and the consent are critically and minutely analyzed, but the principles underlying a determination of this case, which must be applied to the facts in the record, have been carefully considered, formulated and promulgated by our courts in such cases as the *Borough of Collingswood* v. *Water Supply Co.*, 84 *N. J. L.* 104; *affirmed,* 85 *Id.* 673; *City of New Brunswick* v. *Board of Conservation and Development,* 94 *Id.* 46; *affirmed, Id.* 558; *Society, &c.,* v. *Board of Conservation and Development,* 90 *Id.* 469; *affirmed,* 91 *Id.* 718; *State* v. *City of Trenton,* 97 *Id.* 241.

It would serve no useful purpose at this time to further discuss in detail the evidence in the record and the argued points in the briefs. Suffice it to say that after a consideration of the above-cited cases, the reasons filed, the points urged and the testimony, the conclusion is reached that the grounds of attack are without sufficient legal merit to set aside the consent and approval under discussion.

This court said in reference to this state tribunal, in the case of *Collingswood* v. *Water Supply Commission,* 84 *N. J. L.* 112, that its findings should not be reversed unless unwarranted in law or unfounded in fact, or unless a discretionary power has been plainly abused.

It is next urged that the consent is unreasonable, because it does not adequately protect the public interest or the public property of the municipalities immediately affected by the construction and operation of the proposed reservoir or the property rights of the prosecutors, therefore it is in violation of the fourteenth amendment to the constitution of the United States and the state constitution, which forbids the taking of property without just compensation and without due process of law. The answer to this is, it is amply provided for in the eminent domain statutes. The burden under the law is upon the city of Bayonne to acquire the rights of all the parties, whether individual, private corporations or municipal corporations, that is necessary for

the construction and development of the watershed and dam. Before the city can begin the development it must acquire these rights under the eminent domain statutes made and provided for this particular purpose. Therefore, the property rights of the prosecutors are in nowise affected. The water is the property of the state.

It is next urged on behalf of some residents and taxpayers of the city of Bayonne that the approval and consent lacks statutory authority for its enactment in its present form, and is indefinite. These points have been considered and disposed of.

Next it is urged the action of the commissioners of the city of Bayonne is *ultra vires.* This is fully answered by a reference to the Home Rule act, article 32. *Pamph L.* 1917, *p.* 429, ¶¶ 1, 3; *Pamph. L.* 1917, *p.* 463.

What this court said upon the subject of a water supply, which was then under attack, is both instructive and pertinent in the case of *Van Reipen* v. *Jersey City,* 58 *N. J. L.* 262, 268. A reading of the consent and approval (which is *Exhibit G*) and the testimony, satisfies me that the board of conservation and development observed and complied with the statutes under which it attemped to act. The conditions thereto attached—Nos. 1, A, B, C, D and E, Nos. 2 and 3— were such as the board had the power to make under the statute. Such conditions were reasonable in form and for protection of the public. *Society, &c.,* v. *Board of Conservation and Development,* 90 *Id.* 469; *affirmed,* 91 *Id.* 718.

The consent or approval of the board of conservation and development brought up by the writs of *certiorari* is affirmed.